Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
1801 Century Park East, 24th Floor,
Los Angeles, CA 90067
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

*Counsel for Plaintiff*

[Additional Counsel in Signature Block]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ES TRUST, derivatively on behalf of Nominal Defendant ERASCA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JONATHAN E. LIM, DAVID CHACKO, JAMES A. BRISTOL, ALEXANDER W. CASDIN, JULIE HAMBLETON, VALERIE HARDING-START, JEAN I. LIU, PRATIK S. MULTANI, and MICHAEL D. VARNEY, <br><br> Defendants, <br><br> and <br><br> ERASCA, INC., <br><br> Nominal Defendant. | Civil Action No. **'26 CV 4517 WQH JAC** <br><br> **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff ES Trust, by the undersigned attorneys, brings this stockholder derivative action on behalf of nominal defendant Erasca, Inc. ("Erasca" or the "Company") against the current members of the Company's Board of Directors (the "Board") and the Company's Chief Financial Officer ("CFO") (the "Individual Defendants") for their breaches of fiduciary duty, violations of the federal securities laws, and other misconduct that resulted in material damage to the Company and its stockholders. These allegations are made upon personal knowledge with respect to Plaintiff and, as to all other matters, upon information and belief based upon the investigation and analysis by Plaintiff's counsel, including, among other things, a review of the Company's press releases

- 1 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

and public filings with the United States Securities and Exchange Commission ("SEC"), corporate governance documents published on the Company's website, a review of the securities class action complaint filed against the Company and its officers and directors, *Ching Cheng v. Erasca, Inc., et al.,* Case No. 3:26-cv-03481-AJB-JLB (S.D. Cal.) (the "Securities Class Action"), transcripts of Erasca conference calls with financial analysts and investors, news reports, financial analyst reports, and other publicly available information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    This is a stockholder derivative action brought against the Company's directors and certain officers for their breach of fiduciary duties and violation of the federal securities laws, as well as other misconduct, which resulted in substantial damage to the Company and its stockholders.

2.    Erasca is a clinical-stage oncology company focused on discovering, developing, and commercializing therapies for RAS/MAPK pathway-driven cancers.

3.    The Individual Defendants failed to implement and maintain internal controls reasonably designed to identify, escalate, evaluate, and address the material clinical-safety, intellectual-property, and disclosure risks associated with ERAS-0015, one of Erasca's principal clinical-stage product candidates, a central component of the Company's RAS-targeting franchise, and a principal driver of the Company's business prospects. These risks concerned Erasca's core operations and required good-faith Board oversight because Erasca's value depended substantially on the successful clinical development and commercialization of ERAS-0015.

4.    The Individual Defendants concealed these internal-controls failures from stockholders by causing Erasca to repeatedly disseminate materially false and misleading statements regarding ERAS-0015 — including materially false and misleading representations regarding the safety and tolerability of ERAS-0015 in the ongoing AURORAS-1 clinical trial, and

- 2 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

materially false and misleading preclinical comparisons between ERAS-0015 and RMC-6236 — throughout the period of the misconduct alleged herein.

5. In 2024, the Board approved a reprioritization program that directed substantial Company resources to ERAS-0015 and deemphasized certain of the Company's other drug initiatives. As a result of the reprioritization, ERAS-0015 became Erasca's single most important product candidate.

6. Erasca's principal competitor in the pan-RAS molecular glue space is Revolution Medicines, Inc. ("RevMed"), which is developing a competing pan-RAS molecular glue known as RMC-6236. RMC-6236 has been publicly identified as the leading pan-RAS molecular glue in clinical development.

7. On January 14, 2025, at the Annual J.P. Morgan Healthcare Conference, Defendant Jonathan E. Lim ("Lim"), Erasca's Chairman, Chief Executive Officer ("CEO"), and co-founder, represented that ERAS-0015 was a best-in-class drug candidate with preclinical properties superior to RevMed's RMC-6236, and that Erasca's intellectual property protection for ERAS-0015 was strong.

8. On March 20, 2025, Erasca filed with the SEC its Annual Report on Form 10-K for the fiscal year ended December 31, 2024 (the "2024 10-K"), which was signed by each of the Individual Defendants. The 2024 10-K contained numerous representations comparing ERAS-0015's preclinical binding affinity, potency, and pharmacokinetic performance favorably against RMC-6236.

9. On January 12, 2026, Erasca filed with the SEC a Current Report on Form 8-K attaching a corporate presentation containing further preclinical data comparisons touting ERAS-0015's superiority over RMC-6236. On January 13, 2026, at the Annual J.P. Morgan Healthcare Conference, Defendant Lim, joined by Defendant David Chacko ("Chacko"), the Company's CFO, again represented on Erasca's behalf that ERAS-0015 was a best-in-class drug candidate and reiterated the favorable preclinical comparisons to RMC-6236.

- 3 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

10. On January 23, 2026, while the Company's stock price was artificially inflated by the false and misleading statements alleged herein, Erasca closed a common stock offering pursuant to a shelf registration statement on Form S-3 (the "SPO"), from which the Company received approximately $258.8 million in gross proceeds, before deducting underwriting discounts and commissions and other offering expenses.

11. On March 12, 2026, Erasca filed with the SEC its Annual Report on Form 10-K for the fiscal year ended December 31, 2025 (the "2025 10-K"), which was signed by each of the Individual Defendants. The 2025 10-K repeated the same favorable preclinical comparisons between ERAS-0015 and RMC-6236 previously made in the 2024 10-K, and represented that the ongoing AURORAS-1 clinical trial had produced favorable safety and tolerability results with no dose-limiting toxicities.

12. On April 27, 2026, Erasca disclosed that the Company had received a letter from legal counsel for RevMed alleging that ERAS-0015 infringes a RevMed patent and is connected to alleged trade-secret misappropriation, and demanding that Erasca cease its comparative statements between ERAS-0015 and RMC-6236.

13. Later on the same day, the Company reported preliminary Phase 1 clinical data for ERAS-0015 from the AURORAS-1 clinical trial that included the disclosure of a serious adverse event, and further conceding that Erasca's prior preclinical comparisons between ERAS-0015 and RMC-6236 were limited and not based on head-to-head clinical trials. In response to these disclosures, the price of Erasca common stock declined more than 45% in premarket trading, closing at $9.90 per share on April 28, 2026.

14. On June 10, 2026, the Securities Class Action was filed against Erasca, Lim, and Chacko, seeking substantial damages on behalf of a class of persons and entities that purchased Erasca securities between January 14, 2025 and April 26, 2026, inclusive, while Erasca's stock price was artificially inflated by materially false and misleading statements and omissions regarding ERAS-0015.

- 4 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

15.     As a direct and proximate result of the Individual Defendants' misconduct alleged herein, Erasca has been and will continue to be exposed to substantial damages, including but not limited to the costs of defending itself and its officers in the Securities Class Action; exposure to the patent-infringement and trade-secret-misappropriation claims raised by RevMed; severe damage to the Company's reputation in the biopharmaceutical industry and among investors, clinicians, and clinical-trial partners; and impairment of the Company's ability to raise capital on favorable terms.

16.     Plaintiff did not make a demand prior to bringing this action because it would be futile. The Company's directors are neither disinterested nor independent. In the absence of this action, Erasca will neither recover its damages nor properly remediate the weaknesses in its internal controls and corporate governance practices and procedures.

## II.     JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), SEC Rule 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder, and for contribution pursuant to Section 21D of the Exchange Act 15 U.S.C. § 78u-4(f)(5),(8). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

18.     This Court has jurisdiction over each Defendant named herein because Erasca maintains its headquarters and does substantial business in this District and, as such, each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

19.     This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

- 5 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

20.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), where the Company maintains its headquarters and where it conducts substantial business.

## III.    THE PARTIES

### A.    Plaintiff

21.     Plaintiff ES Trust purchased Erasca stock in June 2025, and has held Erasca common stock continuously since that time. As such, Plaintiff was a shareholder at the time of the transactions complained of herein. Plaintiff will adequately and fairly represent the interests of Erasca in enforcing and prosecuting its rights and, to that end, has retained competent counsel, experienced in derivative litigation, to prosecute this action.

### B.    Defendants

#### 1.    Nominal Defendant Erasca

22.     Erasca is a Delaware corporation with its principal executive offices located at 3115 Merryfield Row, Suite 300, San Diego, California 92121. Its common stock trades on the Nasdaq Stock Market ("Nasdaq") under the ticker symbol "ERAS."

#### 2.    Individual Defendants

23.     Defendant Lim is the Chairman, CEO, and co-founder of Erasca. Lim is a named defendant in the Securities Class Action. Lim is not an independent director and is not listed as such in Erasca's 2026 Proxy Statement. Since 2024, Lim has received the following compensation from Erasca:

| Year | Salary | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|---------------|----------------------------------------|------------------------|-------|
| 2024 | $644,600 | $2,794,308 | $444,774 | $10,350 | $3,894,032 |
| 2025 | $670,400 | $3,135,250 | $482,688 | $10,500 | $4,298,838 |

24.     Defendant Chacko has served as Erasca's CFO since December 2020 and as Chief Business Officer since April 2023, having previously served as Chief Business Officer from

- 6 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

August 2019 to December 2020. He is a named defendant in the Securities Class Action. Since 2024, Chacko has received the following compensation from Erasca:

| Year | Salary | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2024 | $492,100 | $1,155,690 | $226,366 | $10,350 | $1,884,506 |
| 2025 | $516,700 | $1,003,280 | $248,016 | $10,500 | $1,778,496 |

25.    Defendant James A. Bristol ("Bristol") has served as an Erasca director since July 2018. Bristol is the Chair of the Compensation Committee and a member of the Nominating and Corporate Governance Committee. Since 2024, Bristol has received the following compensation from Erasca:

| Year | Fees Earned or Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2024 | $84,000 | $95,095 | $179,095 |
| 2025 | $87,000 | $121,908 | $208,908 |

26.    Defendant Alexander W. Casdin ("Casdin") has served as an Erasca director since July 2018. Casdin is the Chair of the Audit Committee. Since 2024, Casdin has received the following compensation from Erasca:

| Year | Fees Earned or Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2024 | $55,000 | $91,909 | $146,909 |
| 2025 | $55,000 | $121,908 | $176,908 |

27.    Defendant Julie Hambleton ("Hambleton") has served as an Erasca director since March 2021. Hambleton is a member of the Audit Committee and the Compensation Committee. Since 2024, Hambleton has received the following compensation from Erasca:

| Year | Fees Earned or Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2024 | $52,500 | $85,866 | $138,366 |
| 2025 | $53,500 | $121,908 | $175,408 |

28.    Defendant Valerie Harding-Start ("Harding-Start") has served as an Erasca director since June 2019. Harding is the Chair of the Nominating and Corporate Governance Committee,

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

and a member of the Compensation Committee. Since 2024, Harding has received the following compensation from Erasca:

| Year | Fees Earned or Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2024 | $53,000 | $91,689 | $144,689 |
| 2025 | $56,000 | $121,908 | $177,908 |

29.     Defendant Jean I. Liu ("Liu") has served as an Erasca director since April 2022. Liu is a member of the Audit Committee. Since 2024, Liu has received the following compensation from Erasca:

| Year | Fees Earned or Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2024 | $47,500 | $91,085 | $138,585 |
| 2025 | $47,500 | $121,908 | $169,408 |

30.     Defendant Pratik S. Multani ("Multani") has served as an Erasca director since July 2018. Multani is a member of the Nominating and Corporate Governance Committee. Since 2024, Multani has received the following compensation from Erasca:

| Year | Fees Earned or Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2024 | $44,000 | $90,700 | $134,700 |
| 2025 | $45,000 | $121,908 | $166,908 |

31.     Defendant Michael D. Varney ("Varney") has served as Erasca's Chair of Research and Development and as a member of the Company's Scientific Advisory Board since August 2020. Varney has served as an Erasca director since December 2020. Varney is not an independent director and is not listed as such in Erasca's 2026 Proxy Statement. Since 2024, Varney has received the following compensation:

| Year | Option Awards | All Other Compensation | Total |
|---|---|---|---|
| 2024 | $85,866 | $89,593 | $175,095 |
| 2025 | $121,908 | $93,181 | $215,089 |

- 8 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

32. Defendants Lim, Chacko, Bristol, Casdin, Hambleton, Harding-Start, Liu, Multani, and Varney are referred to herein as the "Individual Defendants."

## IV. THE INDIVIDUAL DEFENDANTS' DUTIES

33. By reason of their positions as officers or directors of Erasca and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed and owe Erasca and its shareholders, fiduciary obligations of loyalty, good faith, due care, and candor, and were and are required to use their utmost ability to control, manage, and oversee Erasca in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Erasca and its shareholders to benefit all shareholders equally and not in furtherance of their own personal interests or benefit.

34. The Individual Defendants, because of their positions of control and authority as directors and officers of Erasca, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

35. As officers and directors of a publicly traded company whose common stock was registered with the SEC and trades on the Nasdaq, the Individual Defendants also owed a duty to ensure the dissemination of accurate, complete, and truthful information concerning Erasca's financial condition, operations, products, internal controls, and business prospects. In addition, the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all material facts so that the market price of the Company's shares would be based upon accurate information. In order to meet these duties, the Individual Defendants were required to exercise reasonable control and supervision over Erasca's management, policies, and internal controls.

36. At all times relevant hereto, the Individual Defendants were the agents of each other and Erasca and were always acting within the course and scope of such agency.

37. The Individual Defendants were and are also subject to particularized duties pursuant to specific policies in effect at Erasca.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**A.      Duties Under Erasca's Code Of Business Conduct And Ethics**

38.      Erasca's Code of Business Conduct and Ethics ("Code of Conduct") applies to, among others, all directors, officers, and employees of the Company. The Code of Conduct states that "[a]ll directors, officers and employees (each a "Covered Party" and, collectively, the "Covered Parties") of the Company are expected to be familiar with the Code and to adhere to the principles and procedures set forth below."

39.      The Code of Conduct obligates Covered Parties to "promptly report suspected violations of laws, rules, regulations or the Code to appropriate personnel, including officers, outside counsel for the Company and the Board or the relevant committee thereof."

40.      The Code of Conduct requires that "all reports and documents filed with or submitted to the SEC, must be full, fair, accurate, timely and understandable" and to this end obligates Covered Parties (to the extent they are involved in the Company's disclosure process) "to maintain familiarity with the disclosure requirements, processes and procedures applicable to the Company commensurate with their duties." The Code of Conduct prohibits Covered Parties "from knowingly misrepresenting, omitting or causing others to misrepresent or omit, material facts about the Company to others, including the Company's independent auditors, governmental regulators and self-regulatory organizations."

41.      The Code of Conduct obligates employees, officers, and directors to comply with all laws, rules, and regulations during the performance of their duties:

> The Company is obligated to comply with all applicable laws, rules and regulations. It is the personal responsibility of each Covered Party to adhere to the standards and restrictions imposed by these laws, rules and regulations in the performance of his or her duties for the Company. These include, but are not limited to laws covering: the development, testing, approval, manufacture, marketing and sale of our product candidates and products, bribery and kickbacks, copyrights, trademarks and trade secrets, information privacy, insider trading, illegal political contributions, antitrust prohibitions, foreign corrupt practices, import and exports, sanctioned countries or persons, offering or receiving gratuities, environmental hazards, employment discrimination or harassment, occupational health and safety, false or misleading financial information or misuse of corporate assets.

42.      The Code of Conduct imposes a duty to maintain the confidentiality of all non-public information:

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

> Confidential or proprietary information includes all non-public information relating to the Company, or other companies, that would be harmful to the relevant company or useful or helpful to competitors if disclosed.
>
> Covered Parties must maintain the confidentiality of all information so entrusted to them, except when disclosure is authorized or legally mandated. Covered Parties must safeguard confidential information by keeping it secure, limiting access to those who have a need to know in order to do their job, and avoiding discussion of confidential information in public areas such as planes, elevators, and restaurants and on mobile phones. This prohibition includes, but is not limited to, inquiries made by the press, analysts, investors or others.

43.     The Code of Conduct emphasizes the need to maintain accurate books and records and conform them to generally accepted accounting principles (GAAP) and to the Company's system of internal controls:

> All financial books, records and accounts must accurately reflect transactions and events, and conform both to generally accepted accounting principles (GAAP) and to the Company's system of internal controls. No entry may be made that intentionally hides or disguises the true nature of any transaction. Covered Parties should therefore attempt to be as clear, concise, truthful and accurate as possible when recording any information.

**B.      Additional Duties Under Erasca's Corporate Governance Guidelines**

44.     Erasca's Corporate Governance Guidelines establish certain responsibilities for all directors, including, inter alia:

- exercising their business judgment in good faith;
- acting in what they reasonably believe to be the best interest of all stockholders;
- becoming and remaining well-informed about the Company's business and operations and general business and economic trends affecting the Company; and
- ensuring that the business of the Company is conducted so as to further the long-term interests of its stockholders.

45.     The Corporate Governance Guidelines also highlight the Board's active role in overseeing management of the Company's risks:

> The Board and the Board committees shall have an active role in overseeing management of the Company's risks. The Board shall regularly review information regarding the Company's credit, liquidity and operations, as well as the risks associated with each. The Company's Compensation Committee shall be

- 11 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

responsible for overseeing the management of risks relating to the Company's executive compensation plans and arrangements. The Company's Audit Committee shall oversee management of financial risks. The Nominating and Corporate Governance Committee shall manage risks associated with the independence of the Board and potential conflicts of interest. While each committee shall be responsible for evaluating certain risks and overseeing the management of such risks, the entire Board is regularly informed through committee reports about such risks.

**C.      Additional Duties Of Audit Committee Members**

46.      The Audit Committee Charter sets forth additional duties for members of the Audit Committee and provides that members are obligated to assist the Board in its oversight of, among other things, internal audit, financial reporting and legal matters; the integrity of the Company's financial statements; and the Company's compliance with legal and regulatory requirements.

47.      The Audit Committee Charter sets forth additional duties of the Audit Committee, including *inter alia*:

- Discussing the Company's policies with respect to risk assessment and risk management.

- Discussing with management its process for assessing the effectiveness of internal control over financial reporting under Section 404 of the Sarbanes- Oxley Act of 2002 (the "Sarbanes-Oxley Act"), including, but not limited to, any material weaknesses or significant deficiencies identified.

- Reviewing management's report on its assessment of the effectiveness of internal control over financial reporting as of the end of each fiscal year and the independent auditor's report on the effectiveness of internal control over financial reporting, if applicable.

- Discussing with the independent auditor the characterization of deficiencies in internal control over financial reporting.

- Discussing with management its remediation plan to address internal control deficiencies and determine that the disclosures describing any identified material weaknesses and management's remediation plans are clear and complete.

- Discussing with management its process for performing its required quarterly certifications under Section 302 of the Sarbanes-Oxley Act, including, but not limited to, the evaluation of the effectiveness of disclosure controls by the Company's principal executive officer and principal financial officer.

- Discussing with management and the independent auditor any (i) changes in internal control over financial reporting that have materially affected or are reasonably likely to materially affect the Company's internal control over financial reporting that are required to be disclosed

- 12 -

and (ii) any other changes in internal control over financial reporting that were considered for disclosure in the Company's periodic filings with the SEC.

- Reviewing and discussing the Company's quarterly financial statements with management and the independent auditor, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

## V.    SUBSTANTIVE ALLEGATIONS

### A.    Background

48.    Erasca is a clinical-stage precision oncology company focused on discovering, developing, and commercializing therapies for patients with RAS/MAPK pathway-driven cancers. Erasca's stated mission is to "erase cancer" by targeting the RAS/MAPK signaling pathway, which drives approximately one-fourth of all solid tumors.

49.    One of Erasca's principal clinical-stage product candidates is ERAS-0015, a pan-RAS molecular glue designed to treat patients with RAS-mutant solid tumors. ERAS-0015 forms a tripartite complex with Cyclophilin A and the active form of RAS to inhibit RAS-dependent signaling. According to the Company, ERAS-0015 has the potential to address unmet medical needs in approximately 2.7 million patients diagnosed annually worldwide with RAS-mutant tumors.

50.    In May 2025, the FDA cleared the investigational new drug application for AURORAS-1, Erasca's initial clinical trial for ERAS-0015.

### B.    The Board Failed To Oversee Erasca's Clinical Development Of ERAS-0015

51.    As directors and officers of Erasca, the Individual Defendants were required to implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015 — the Company's single most important product candidate.

52.    The Individual Defendants knew that ERAS-0015 was Erasca's most important drug candidate and that the Company had committed substantial resources to its development,

- 13 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

including through the Board-approved reprioritization program. The Individual Defendants also knew that Erasca's public statements regarding ERAS-0015's preclinical properties, safety profile, and comparative advantages over competing product candidates were material to investors and would drive market perception of the Company's business prospects.

53.     Despite the mission-critical nature of ERAS-0015 to Erasca's operations, the Individual Defendants failed to implement and maintain an effective system of internal controls to ensure that the Company's preclinical data comparisons between ERAS-0015 and RevMed's RMC-6236 were appropriate, that such comparisons did not expose the Company to patent-infringement or trade-secret-misappropriation claims, and that the Company's disclosures regarding the safety and tolerability of ERAS-0015 in the ongoing AURORAS-1 clinical trial were truthful and complete. The Individual Defendants instead permitted the Company to repeatedly disseminate materially false and misleading statements regarding ERAS-0015 to the investing public, exposing Erasca to the securities fraud liability described herein.

54.     The Individual Defendants' representations regarding ERAS-0015 were consistent with awareness of — or reckless disregard for — the underlying deficiencies in the Company's clinical-development oversight, the impropriety of the Company's preclinical comparisons to RevMed's RMC-6236, and the safety issues emerging from the AURORAS-1 clinical trial.

**C.     The Company, Its Directors And Officers Misrepresent Erasca's Competitive Position And The Advancement Of ERAS-0015**

55.     On January 14, 2025, at the Annual J.P. Morgan Healthcare Conference, Defendant Lim represented on Erasca's behalf that ERAS-0015 is a "potential best-in-class pan-RAS molecular glue" that "basically binds cyclophilin A or CYPA and forms a tripartite moiety, very similar to Revolution Medicines RMC-6236."

56.     On the same day and at the same conference, Defendant Lim represented that "IP is strong with exclusivity expected through 2043 and no patentability roadblocks identified to date."

- 14 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

57.     Also at the January 14, 2025 J.P. Morgan Healthcare Conference, in response to an analyst question regarding "the evolving competitive landscape from Revolution Medicines," Defendant Lim represented that "Rev Med clearly is the trailblazer in this space. I think we've learned a lot from their clinical data in terms of PDAC as well as more recently non-small cell lung cancer."

58.     Also in response to the analyst's question at the January 14, 2025 J.P. Morgan Healthcare Conference, Defendant Lim represented, regarding a third pan-RAS molecular glue in development in China: "And also based on the preclinical data we've seen, it looks to have a profile, not too dissimilar from 6236 at this point, but it's still early days."

59.     Also at the January 14, 2025 J.P. Morgan Healthcare Conference, Defendant Lim represented that "I think we've learned mostly from RMC-6236 in terms of clinical data for PDAC and lung."

60.     On March 20, 2025, Erasca filed the 2024 10-K with the SEC. The 2024 10-K was signed by Defendants Lim, Chacko, Bristol, Casdin, Hambleton, Harding-Start, Liu, Multani, and Varney.

61.     Defendants Lim and Chacko signed certifications required by Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 ("SOX") appended to the 2024 10-K, representing that "the financial statements and other financial information" included in the 2024 10-K "fairly present, in all material respects, the financial condition, results of operations and cash flows of the registrant as of and for the periods presented in this report." Defendants Lim and Chacko further certified that they had "[d]esigned such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared."

62.     In the 2024 10-K, the Individual Defendants represented that ERAS-0015 "has demonstrated 8-21-fold higher binding affinity to cyclophilin A relative to RMC-6236 (the leading pan-RAS molecular glue in development), which we believe may enable more potent inhibition."

- 15 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

63. The 2024 10-K further represented, regarding the dose normalized tumor distribution assessment, that ERAS-0015's "tumor PK exposures relative to the corresponding blood concentrations at 4 and 24 hours post-dose were much higher compared to the same measure for RMC-6236 . . . indicating preferential tumor distribution for ERAS-0015."

64. The 2024 10-K further represented: "[T]he decrease in ERAS-0015 tumor concentrations from 4 to 24 hours post-dose was much smaller compared to that of RMC-6236, suggesting longer tumor residence time for ERAS-0015."

65. The 2024 10-K also represented: "Taken together, these data demonstrated that ERAS-0015 showed preferential tumor distribution and longer residence time relative to RMC-6236, which we believe may help drive antitumor activity."

66. The 2024 10-K further represented, regarding the in vitro preclinical potency of ERAS-0015: "ERAS-0015 showed superior in vitro potency when compared to RMC-6236 with an average of 5 times greater potency."

67. The 2024 10-K further represented, regarding the in vivo preclinical efficacy of ERAS-0015: "Potentially due to its greater binding affinity to CypA than RMC-6236, ERAS-0015 demonstrated comparable to greater in vivo antitumor activity at doses which were approximately one-tenth to one-eighth of the dose of RMC-6236."

68. The 2024 10-K further represented: "ERAS-0015 was able to achieve tumor regression at 1 mpk relative to RMC-6236 at 10 mpk."

69. The 2024 10-K further represented, regarding pharmacokinetic analyses: "In a head-to-head comparison of ERAS-0015 and RMC-6236, ERAS-0015 outperformed RMC-6236 on three key metrics (specifically, lower clearance, longer half-life, and higher bioavailability demonstrated across all species tested) that we believe may provide ERAS-0015 a clinical advantage in the clinic over RMC-6236."

70. The 2024 10-K further represented: "Based on the differentiated potency and PK/ADME results, we predict that ERAS-0015 will be efficacious at lower doses than the leading pan-RAS molecular glue in development, which may lower the risk of solubility-limited

- 16 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

absorption issues and enable linear PK exposure relative to the leading pan-RAS molecular glue in development. In addition, the hERG IC50 was greater than 10 micromolar which suggests potentially lower concern for cardiovascular risk."

71. On May 13, 2025, Erasca filed with the SEC a Current Report on Form 8-K attaching a press release announcing the Company's business updates and financial results for the fiscal quarter ended March 31, 2025 (the "Q1 2025 Press Release"). The Form 8-K was signed on the Company's behalf by Defendant Chacko as the Company's CFO. In the Q1 2025 Press Release, Defendant Lim represented on Erasca's behalf: "We are pleased with the pace and execution of our RAS-targeting franchise and its early entry into the clinic following the recent IND clearance for ERAS-0015 and IND filing for ERAS-4001."

72. On the same day, May 13, 2025, Erasca filed with the SEC its Quarterly Report on Form 10-Q for the quarter ended March 31, 2025 (the "Q1 2025 10-Q"), which was signed by Defendant Chacko as the Company's CFO. The Q1 2025 10-Q incorporated by reference and reaffirmed the disclosures previously made in the 2024 10-K regarding ERAS-0015. Defendants Lim and Chacko signed SOX certifications appended to the Q1 2025 10-Q in substantially the same form as those appended to the 2024 10-K.

73. On August 12, 2025, Erasca filed with the SEC a Current Report on Form 8-K attaching a press release announcing the Company's business updates and financial results for the fiscal quarter ended June 30, 2025 (the "Q2 2025 Press Release"). The Form 8-K was signed on the Company's behalf by Defendant Chacko as the Company's CFO. In the Q2 2025 Press Release, Defendant Lim represented on Erasca's behalf: "We are excited by the continued momentum of our RAS-targeting franchise . . . we expect to deliver initial Phase 1 monotherapy data for our potential best-in-class pan-RAS molecular glue ERAS-0015 and our potential first-in-class and best-in-class pan-KRAS inhibitor ERAS-4001 in 2026."

74. On the same day, August 12, 2025, Erasca filed with the SEC its Quarterly Report on Form 10-Q for the quarter ended June 30, 2025 (the "Q2 2025 10-Q"), which was signed by Defendant Chacko as the Company's CFO. The Q2 2025 10-Q incorporated by reference and

- 17 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

reaffirmed the disclosures previously made in the 2024 10-K regarding ERAS-0015. Defendants Lim and Chacko signed SOX certifications appended to the Q2 2025 10-Q in substantially the same form as those appended to the 2024 10-K.

75. On November 12, 2025, Erasca filed with the SEC a Current Report on Form 8-K attaching a press release announcing the Company's business updates and financial results for the fiscal quarter ended September 30, 2025 (the "Q3 2025 Press Release"). The Form 8-K was signed on the Company's behalf by Defendant Chacko as the Company's CFO. In the Q3 2025 Press Release, Defendant Lim represented on Erasca's behalf: "A U.S. patent was issued that covers the composition of matter for our potential best-in-class pan-RAS molecular glue ERAS-0015, the first of several patents we anticipate may be issued, which would strengthen the intellectual property surrounding our differentiated RAS portfolio." Defendant Lim further represented: "Clinical development of ERAS-0015 and our potential best-in-class pan-KRAS inhibitor ERAS-4001 is on track, with initial Phase 1 monotherapy data for both ERAS-0015 and ERAS-4001 expected in 2026."

76. On the same day, November 12, 2025, Erasca filed with the SEC its Quarterly Report on Form 10-Q for the quarter ended September 30, 2025 (the "Q3 2025 10-Q"), which was signed by Defendant Chacko as the Company's CFO. The Q3 2025 10-Q incorporated by reference and reaffirmed the disclosures previously made in the 2024 10-K regarding ERAS-0015. Defendants Lim and Chacko signed SOX certifications appended to the Q3 2025 10-Q in substantially the same form as those appended to the 2024 10-K.

77. Throughout the period of the misconduct alleged herein, and consistent with prior years, Defendants Lim and/or Chacko participated on Erasca's behalf in numerous healthcare investor conferences at which they made presentations and participated in fireside chats and one-on-one investor meetings regarding ERAS-0015 and the Company's RAS-targeting franchise, including: the Bank of America Securities Health Care Conference (May 14, 2025); the Jefferies Global Healthcare Conference (June 4, 2025); the Goldman Sachs 46th Annual Global Healthcare Conference (June 10, 2025); the Guggenheim 2nd Annual Healthcare Innovation Conference

- 18 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

(November 11, 2025); the Stifel 2025 Healthcare Conference (November 12, 2025); and the Jefferies London Healthcare Conference (November 19, 2025).

78.    On January 12, 2026, Erasca filed with the SEC a Current Report on Form 8-K attaching a corporate presentation providing an update regarding the initial clinical progress of ERAS-0015. The presentation included multiple slides comparing ERAS-0015 to RMC-6236, including slides titled: "ERAS-0015's higher CYPA binding affinity may be a differentiator from RMC-6236, demonstrating potential best-in-class profile"; "ERAS-0015 demonstrated significantly more potent inhibition of cell growth across KRAS mutant cell lines vs. RMC-6236"; "ERAS-0015 demonstrated comparable antitumor activity to RMC-6236 at 1/10th of the dose in a sensitive KRAS G12D PDAC CDX model"; "ERAS-0015 demonstrated comparable antitumor activity to RMC-6236 at 1/10th of the dose in an insensitive KRAS G12V NSCLC CDX model"; "ERAS-0015 demonstrated preferential tumor distribution and longer residence time vs. RMC-6236 in vivo"; and "ERAS-0015 showed promising PK in mouse, rat, dog, and monkey" in comparison to RMC-6236.

79.    On January 13, 2026, at the Annual J.P. Morgan Healthcare Conference, Defendant Lim made several representations, including, *inter alia*:

- ERAS-0015 is "the potential best-in-class pan-RAS molecular glue."

- "ERAS-0015's potential differentiation really stems from the high binding affinity to cyclophilin A or CypA. And so this works by a similar molecular glue mechanism where this has about 8 to 21-fold higher binding affinity to CypA versus RMC-6236."

- "[I]t results in better potency across multiple cell lines. You can see various degrees of full potency versus 6236 against different mutations of interest across the spectrum of KRAS and other drivers."

- "[I]n vivo, we're seeing ERAS-0015 demonstrating comparable antitumor activity to RMC-6236 at just 1/10 of the dose."

- Regarding the PK-59 KRAS G12D pancreatic model: "6236 was able to achieve very good tumor regression with 3 mpk. And what's really impressive is that ERAS-0015 was able to achieve the same degree of tumor regression with 0.3 mpk or 1/10 of the dose. So that just gives you a sense of how potent both of these molecules are, but 6236 in this comparison requires 10x the dose."

- 19 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

- Regarding the NCI-H727 KRAS G12V non-small cell lung cancer model: "And also impressively, ERAS-0015 was able to achieve that with just 1 mpk. So again, the 1/10 of the dose in an insensitive model."

- "But importantly, from a PK perspective, the kinetics of ERAS-0015 also look very promising. So if you look at the tumor distribution and residence time, 15 does look like it has preferential tumor distribution and longer residence time."

- "[Y]ou could see that 6236 diminishes or decreases over that 24-hour period, but ERAS-0015 levels are sustainably high. And so what that tells us is that . . . there is a CypA that's overexpressed in multiple solid tumor types. And because of the higher binding affinity of ERAS-0015 to CypA, it's just lingering in the tumor and surrounding tissues a little longer."

- Regarding pharmacokinetic performance across animal species: "ERAS-0015 had lower clearance across the board relative to 6236, longer half-life and a higher oral bioavailability[.]"

- Regarding the ongoing Phase 1 AURORAS-1 clinical trial: "[T]op line safety, tolerability, PK and initial efficacy data for dozens of patients are planned for this first half. But in the meantime, based on the early signs of activity as well as safety and tolerability and PK, we think 15 has the potential to become a preferred RAS targeting backbone for combinations."

80.    On January 23, 2026, while Erasca's stock price was artificially inflated by the false and misleading statements alleged herein, Erasca closed the SPO, generating $258.8 million in gross proceeds, before deducting underwriting discounts and commissions and other offering expenses.

81.    On March 12, 2026, Erasca also filed with the SEC a Current Report on Form 8-K attaching a press release announcing the Company's business updates and financial results for the fiscal quarter and full year ended December 31, 2025. The Form 8-K was signed on the Company's behalf by Defendant Chacko as CFO. In the press release, Defendant Lim represented on Erasca's behalf: "Our RAS-targeting franchise continues to advance rapidly in the clinic, reflecting our strong operational execution and high investigator and patient enthusiasm." The press release further represented that "Erasca announced promising early clinical activity for ERAS-0015 during dose escalation, including confirmed partial responses in multiple tumor types with different RAS mutations, favorable safety and tolerability data, with no dose-limiting toxicities and predominantly low-grade adverse events and encouraging safety and well-behaved, linear PK."

- 20 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

82. On March 12, 2026, Erasca also filed the 2025 10-K with the SEC. The 2025 10-K was signed by Defendants Lim, Chacko, Bristol, Casdin, Hambleton, Harding-Start, Liu, Multani, and Varney.

83. Defendants Lim and Chacko signed SOX certifications appended to the 2025 10-K, representing that "the financial statements and other financial information" included in the 2025 10-K "fairly present, in all material respects, the financial condition, results of operations and cash flows of the registrant as of and for the periods presented in this report." Defendants Lim and Chacko further certified that they had "[d]esigned such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared."

84. In the 2025 10-K, the Individual Defendants repeated the same preclinical data comparisons between ERAS-0015 and RMC-6236 previously made in the 2024 10-K.

85. The 2025 10-K also represented, regarding the ongoing Phase 1 AURORAS-1 clinical trial: "On January 12, 2026, we provided an update regarding the initial clinical progress of ERAS-0015. The update consisted of the following, as of a data cutoff of January 7, 2026 . . . Favorable safety and tolerability results, with no dose-limiting toxicities and predominantly low-grade adverse events observed at all dose levels evaluated[.]"

**D.    Erasca Discloses The RevMed Infringement Letter And Serious Safety Event**

86. On April 27, 2026, before the market opened, Erasca filed with the SEC a Current Report on Form 8-K disclosing that the Company had received a letter from legal counsel for RevMed alleging that ERAS-0015 infringes a RevMed patent (U.S. Patent No. 12,409,225) and is connected to alleged trade secret misappropriation. RevMed further alleged that Erasca had "improperly compared preclinical data of ERAS-0015 and RMC-6236 in public disclosures" and demanded that Erasca cease making "deceptive and untrue comparative statements comparing ERAS-0015 and RMC-6236."

- 21 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

87. Following this disclosure, Erasca's stock price fell from a closing price of $21.49 per share on April 24, 2026 to open at $20.70 per share on April 27, 2026. Erasca's stock price continued to decline throughout the trading day, closing at $19.15 per share on April 27, 2026.

88. Later on the same day, Erasca filed with the SEC a separate Current Report on Form 8-K reporting preliminary Phase 1 clinical data for ERAS-0015 from the AURORAS-1 clinical trial. In this filing, Erasca disclosed that one patient who had received 24 milligrams of ERAS-0015 had died approximately one month after starting the drug. The patient was classified as a "Grade 3 TRAE of pneumonitis" that "progressed to Grade 5 after withdrawal of supportive care per patient decision."

89. In the same April 27, 2026 evening Form 8-K, Erasca further disclosed that comparisons between ERAS-0015 and other product candidates, including RMC-6236, were based on cross-study analyses and "not based on any head-to-head clinical trials," and that such comparisons are "inherently limited and such data may not be directly comparable."

90. In response to these revelations, the price of Erasca common stock declined more than 45% in premarket trading, falling from a closing price of $19.15 per share on April 27, 2026 to an opening price of $10.51 per share on April 28, 2026. Erasca's stock price continued to decline, closing at $9.90 per share on April 28, 2026.

**E.     Erasca's False And Misleading 2025 Proxy Statement**

91. On April 29, 2025, the Company filed its 2025 Proxy Statement and solicited stockholder votes to, among other things, elect Defendants Lim, Bristol, and Harding-Start as directors. The 2025 Proxy Statement was authorized by the Board.

92. Regarding the Board's oversight of risk, the 2025 Proxy Statement represented:
The Board has responsibility for the oversight of our risk management processes and, either as a whole or through its committees, regularly discusses with management our major risk exposures, their potential impact on our business and the steps we take to manage them. The risk oversight process includes receiving regular reports from Board committees and members of senior management to enable the Board to understand our risk identification, risk management and risk mitigation strategies with respect to areas of potential material risk, including operations, finance, legal, regulatory, strategic and reputational risk.

- 22 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

93.     The 2025 Proxy Statement further represented regarding the Audit Committee's oversight duties: "The Audit Committee reviews information regarding liquidity and operations, and oversees our management of financial risks. Periodically, the Audit Committee reviews our policies with respect to risk assessment, risk management, loss prevention and regulatory compliance, including with respect to cybersecurity."

94.     The 2025 Proxy Statement further represented: "While each committee is responsible for evaluating certain risks and overseeing the management of such risks, the entire Board is regularly informed through committee reports about such risks. Matters of significant strategic risk are considered by the Board as a whole."

95.     The 2025 Proxy Statement represented that the Compensation Committee is "responsible for assessing whether any of our compensation policies or programs has the potential to encourage excessive risk-taking."

96.     The 2025 Proxy Statement further represented that the Audit Committee's responsibilities include, among other things, "reviewing the design, implementation, adequacy and effectiveness of our internal accounting controls and our critical accounting policies" and "reviewing, overseeing and monitoring the integrity of our consolidated financial statements and our compliance with legal and regulatory requirements as they relate to financial statements or accounting matters."

97.     The representations in the 2025 Proxy Statement regarding the Board's risk oversight practices were false and misleading and omitted material information. Contrary to the representations made in the 2025 Proxy Statement, the Board was required but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, including intellectual property laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015; (2) effectively oversee and monitor the material risks facing the Company, including the risks associated with the Company's preclinical comparisons between

- 23 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

ERAS-0015 and RMC-6236 and the risks associated with the ongoing AURORAS-1 clinical trial; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Had the Individual Defendants taken timely action, the damage caused to Erasca could have been prevented or at least minimized.

98.     On July 1, 2025, Erasca filed with the SEC a Current Report on Form 8-K announcing, among other things, the election of Defendants Lim, Bristol, and Harding-Start as directors pursuant to the solicitations in the 2025 Proxy Statement.

**F.      Erasca Is Sued In The Securities Class Action**

99.     On June 10, 2026, the Securities Class Action was filed in the United States District Court for the Southern District of California against Erasca, Defendant Lim, and Defendant Chacko, asserting claims under Sections 10(b) and 20(a) of the Exchange Act on behalf of all persons and entities that purchased or otherwise acquired Erasca securities between January 14, 2025 and April 26, 2026, inclusive. As a result, the Company will incur substantial costs defending itself and its officers in the Securities Class Action and faces further substantial costs in the event of an adverse judgment.

100.    The Securities Class Action alleges that Erasca, Defendant Lim, and Defendant Chacko caused the Company to make materially false and misleading statements and omissions regarding ERAS-0015 — including preclinical data comparisons between ERAS-0015 and RevMed's RMC-6236 — that artificially inflated the price of Erasca common stock throughout the class period. According to the Securities Class Action, when the truth regarding Erasca's exposure to patent-infringement and trade-secret-misappropriation claims by RevMed, and regarding the Phase 1 AURORAS-1 clinical trial safety data for ERAS-0015, was disclosed on April 27 and April 28, 2026, the price of Erasca common stock declined precipitously, causing substantial damages to Erasca's investors and exposing the Company to significant liability under the federal securities laws. The Individual Defendants' failure to implement and maintain adequate internal controls to oversee ERAS-0015's clinical development and the Company's public

- 24 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

disclosures regarding ERAS-0015 — the same failures pled herein — is what caused Erasca's exposure to the claims asserted in the Securities Class Action.

### G.     Damage To The Company

101.     As a direct and proximate result of the Individual Defendants' violations of the securities laws, breaches of fiduciary duty, and other misconduct alleged herein, Erasca has sustained substantial damages, including but not limited to: (a) the substantial costs it will incur defending itself and its officers in the Securities Class Action, and its exposure to further substantial costs in the event of an adverse judgment; (b) exposure to the patent-infringement and trade-secret-misappropriation allegations raised by RevMed; and (c) severe damage to the Company's reputation in the biopharmaceutical industry, the investment community, and among patients, clinicians, and clinical-trial partners.

## VI.     DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

102.     Plaintiff brings this action derivatively and for the benefit of Erasca to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and officers of Erasca and violations of Section 14(a) of the Exchange Act, and to seek contribution for violations of Section 21D of the Exchange Act, as well as the aiding and abetting thereof.

103.     Erasca is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

104.     Plaintiff is, and has been at all relevant times, a stockholder of Erasca and was a stockholder of the Company at the time of the misconduct alleged herein. Plaintiff will adequately and fairly represent the interests of Erasca in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to prosecute this action. At the time this action was commenced, Erasca's Board consisted of eight directors: Lim, Bristol, Casdin, Hambleton, Harding-Start, Liu, Multani, and Varney. Demand is excused because at least half of the directors are not independent or disinterested to consider whether Erasca should pursue claims arising from the misconduct alleged herein.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

105. Demand upon the Board to institute this action against the Individual Defendants would be futile and is, therefore, excused.

### A. Demand Upon Defendant Lim Is Excused

106. Defendant Lim serves as Erasca's Chairman, CEO, and co-founder. Lim therefore is not independent, and the Board itself has expressly determined that Lim is not independent, as reflected in the 2025 Proxy Statement. As an employee of Erasca, the Company provides Lim with his principal occupation from which he receives substantial compensation, including $3,894,032 in 2024 and $4,298,838 in 2025. Thus, Lim could not consider a demand for action that might require him to sue the directors who control his continued employment and substantial compensation or fellow members of management with whom he works on a day-to-day basis.

107. In January 2026, Erasca granted Lim options to purchase 2,000,000 shares of the Company's common stock. The options vest in 48 monthly installments beginning on January 29, 2026, subject to Lim's continuous service through each vesting date. Erasca's Board and Compensation Committee are responsible for approving equity grants, and the Compensation Committee periodically reviews Lim's compensation. Lim's substantial unvested equity compensation and continued employment with Erasca preclude him from considering a demand to take action against the other directors with the required independence and disinterest.

108. Lim is a named defendant in the Securities Class Action. As such, Lim is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

109. Lim signed the 2024 10-K and the 2025 10-K, each of which contained materially false and misleading statements regarding ERAS-0015. Lim also personally made materially false and misleading statements regarding ERAS-0015 on Erasca's behalf at the January 14, 2025 and January 13, 2026 J.P. Morgan Healthcare Conferences, as detailed above.

110. Lim co-founded Ignyta, Inc. ("Ignyta") in 2011 and led Ignyta from 2012 as its Chairman, CEO, and President through its acquisition by Roche in February 2018. During Lim's leadership of Ignyta, Bristol and Casdin served as Ignyta directors, Multani served as Ignyta's

- 26 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Chief Medical Officer, and Harding-Start served as Ignyta's Senior Vice President of Chemistry, Manufacturing and Controls.

111. Shortly after Roche acquired Ignyta, Lim co-founded Erasca in July 2018. Bristol, Casdin, and Multani each joined Erasca's Board in July 2018, and Harding-Start joined Erasca's Board in June 2019. Thus, five members of the eight-member demand Board—including Lim and four former Ignyta directors or senior executives—served together first at Ignyta and later at Erasca. Thus, due to their longstanding professional relationship, Lim, Bristol, Casdin, Multani and Harding-Start cannot consider a demand to take action against each other with the required independence and disinterest.

112. Lim authorized the 2025 Proxy Statement, which contained false and misleading statements and material omissions, and Lim faces a substantial likelihood of liability therefor.

113. Lim benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing his election to the Erasca Board through false and misleading statements and material omissions in the 2025 Proxy Statement.

114. Lim, as an officer and director of Erasca, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Had Lim taken timely action, the damage caused to Erasca could have been prevented or at least minimized.

115. Lim is neither disinterested nor independent and faces a substantial likelihood of liability for the claims asserted herein. Any demand upon Defendant Lim is futile and, thus, excused.

- 27 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**B.      Demand Upon Defendant Bristol Is Excused**

116.    Bristol has served as the Company's Lead Independent Director since July 2023. Although Bristol's initial term as Lead Independent Director ran through the 2025 Annual Meeting, the Board elected him in April 2025 to an additional three-year term extending through the 2028 Annual Meeting.

117.    Bristol previously served as an Ignyta director from 2014 through Ignyta's acquisition by Roche in February 2018, while Lim served as Ignyta's Chairman, CEO, and President, Casdin served as an Ignyta director, Multani served as Ignyta's Chief Medical Officer, and Harding-Start served as Ignyta's Senior Vice President of Chemistry, Manufacturing and Controls. Within approximately five months after Ignyta's acquisition, Bristol, Casdin, and Multani each joined the Board of Erasca, the precision-oncology company co-founded by Lim, and Harding-Start subsequently joined Erasca's Board in June 2019. Bristol has thus maintained longstanding and continuing professional relationships with Lim, Casdin, Multani, and Harding-Start through their service together at two successive oncology companies for substantial portions of more than a decade. These extensive and continuing relationships preclude Bristol from considering a demand to pursue claims against Lim, Casdin, Multani, or Harding-Start with the required independence and disinterest.

118.    Bristol signed the 2024 10-K and the 2025 10-K, each of which contained materially false and misleading statements regarding ERAS-0015.

119.    Bristol authorized the 2025 Proxy Statement, which contained false and misleading statements and material omissions, and Bristol faces a substantial likelihood of liability therefor.

120.    Bristol benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing his election to the Erasca Board through false and misleading statements and material omissions in the 2025 Proxy Statement.

121.    As a member of the Nominating and Corporate Governance Committee, Bristol was responsible for the oversight of the Company's corporate governance policies and practices. Bristol utterly failed to perform these essential duties.

- 28 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

122. Bristol, as a director of Erasca, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Had Bristol taken timely action, the damage caused to Erasca could have been prevented or at least minimized.

123. Bristol is neither disinterested nor independent and faces a substantial likelihood of liability for the claims asserted herein. Any demand upon Defendant Bristol is futile and, thus, excused.

### C.     Demand Upon Defendant Casdin Is Excused

124. Casdin previously served as an Ignyta director from 2013 to 2018, during which time Lim served as Ignyta's Chairman, CEO, and President, Bristol served as an Ignyta director, Multani served as Ignyta's Chief Medical Officer, and Harding-Start served as Ignyta's Senior Vice President of Chemistry, Manufacturing and Controls. In July 2018, shortly after Ignyta's acquisition by Roche and Erasca's formation, Casdin joined Erasca's Board together with Bristol and Multani. Casdin thereafter continued serving alongside Lim at Erasca, and Harding-Start joined them on Erasca's Board in June 2019. Casdin has therefore maintained longstanding and continuing professional relationships with Lim, Bristol, Multani, and Harding-Start through their successive service together at Ignyta and Erasca. These extensive and continuing relationships preclude Casdin from considering a demand to pursue claims against Lim, Bristol, Multani, or Harding-Start with the required independence and disinterest.

125. Casdin signed the 2024 10-K and the 2025 10-K, each of which contained materially false and misleading statements regarding ERAS-0015.

- 29 -

126. As Chair of the Audit Committee, Casdin had duties regarding oversight of the risks facing the Company and Erasca's compliance with relevant laws, rules, and regulations. Casdin utterly failed to perform these essential duties.

127. Casdin authorized the 2025 Proxy Statement, which contained false and misleading statements and material omissions, and Casdin faces a substantial likelihood of liability therefor.

128. Casdin, as a director of Erasca, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Had Casdin taken timely action, the damage caused to Erasca could have been prevented or at least minimized.

129. Casdin is neither disinterested nor independent and faces a substantial likelihood of liability for the claims asserted herein. Any demand upon Defendant Casdin is futile and, thus, excused.

### D.    Demand Upon Defendant Hambleton Is Excused

130. Hambleton signed the 2024 10-K and the 2025 10-K, each of which contained materially false and misleading statements regarding ERAS-0015.

131. As a member of the Audit Committee, Hambleton had duties regarding oversight of the risks facing the Company and Erasca's compliance with relevant laws, rules, and regulations. Hambleton utterly failed to perform these essential duties.

132. Hambleton authorized the 2025 Proxy Statement, which contained false and misleading statements and material omissions, and Hambleton faces a substantial likelihood of liability therefor.

133. Hambleton and Varney have a longstanding professional connection arising from their overlapping service at Genentech from approximately 2005 to 2010, where Hambleton held

- 30 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

roles of increasing responsibility in BioOncology and Varney held senior research and development positions.

134. Hambleton, as a director of Erasca, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Had Hambleton taken timely action, the damage caused to Erasca could have been prevented or at least minimized.

135. Hambleton is neither disinterested nor independent and faces a substantial likelihood of liability for the claims asserted herein. Any demand upon Defendant Hambleton is futile and, thus, excused.

**E.     Demand Upon Defendant Harding-Start Is Excused**

136. Harding-Start served as Ignyta's Senior Vice President of Chemistry, Manufacturing and Controls from 2015 through January 2019 and served as Site Head during Ignyta's acquisition by Roche. During her tenure at Ignyta, Harding-Start worked alongside Lim, who served as Ignyta's Chairman, CEO, and President; Bristol and Casdin, who served as Ignyta directors; and Multani, who served as Ignyta's Chief Medical Officer. Following the acquisition, Lim co-founded Erasca, Bristol, Casdin, and Multani joined Erasca's Board in July 2018, and Harding-Start joined Erasca's Board in June 2019. Harding-Start has thus maintained longstanding and continuing professional relationships with Lim, Bristol, Casdin, and Multani through their service together at two successive oncology companies. These extensive and continuing relationships preclude Harding-Start from considering a demand to pursue claims against Lim, Bristol, Casdin, or Multani with the required independence and disinterest.

137. Harding-Start signed the 2024 10-K and the 2025 10-K, each of which contained materially false and misleading statements regarding ERAS-0015.

- 31 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

138. Harding-Start authorized the 2025 Proxy Statement, which contained false and misleading statements and material omissions, and Harding-Start faces a substantial likelihood of liability therefor.

139. Harding-Start benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing her election to the Erasca Board through false and misleading statements and material omissions in the 2025 Proxy Statement.

140. As Chair of the Nominating and Corporate Governance Committee, Harding-Start was responsible for, among other things, overseeing the Company's corporate governance policies, reporting and making recommendations to the Board concerning governance matters, and reviewing and assisting the Board with oversight of matters relating to environmental, social and governance matters affecting the Company. Harding-Start utterly failed to perform these essential duties.

141. Harding-Start, as a director of Erasca, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Had Harding-Start taken timely action, the damage caused to Erasca could have been prevented or at least minimized.

142. Harding-Start is neither disinterested nor independent and faces a substantial likelihood of liability for the claims asserted herein. Any demand upon Defendant Harding-Start is futile and, thus, excused.

**F.      Demand Upon Defendant Liu Is Excused**

143. Liu signed the 2024 10-K and the 2025 10-K, each of which contained materially false and misleading statements regarding ERAS-0015.

- 32 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

144. As a member of the Audit Committee, Liu had duties regarding oversight of the risks facing the Company and Erasca's compliance with relevant laws, rules, and regulations. Liu utterly failed to perform these essential duties.

145. Liu authorized the 2025 Proxy Statement, which contained false and misleading statements and material omissions, and Liu faces a substantial likelihood of liability therefor.

146. Liu, as a director of Erasca, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Had Liu taken timely action, the damage caused to Erasca could have been prevented or at least minimized.

147. Liu is neither disinterested nor independent and faces a substantial likelihood of liability for the claims asserted herein. Any demand upon Defendant Liu is futile and, thus, excused.

**G.    Demand Upon Defendant Multani Is Excused**

148. Multani served as Ignyta's Chief Medical Officer from 2015 through Ignyta's acquisition by Roche in February 2018, during which time Lim served as Ignyta's Chairman, CEO and President, Bristol and Casdin served as Ignyta directors, and Harding-Start served as Ignyta's Senior Vice President of Chemistry, Manufacturing and Controls. In July 2018, approximately five months after Ignyta's acquisition, Multani joined Erasca's Board together with Bristol and Casdin at the precision-oncology company co-founded by Lim. Harding-Start subsequently joined Erasca's Board in June 2019. Multani has therefore maintained longstanding and continuing professional relationships with Lim, Bristol, Casdin, and Harding-Start through their successive service together at Ignyta and Erasca. These extensive and continuing relationships preclude

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Multani from considering a demand to pursue claims against Lim, Bristol, Casdin, or Harding-Start with the required independence and disinterest.

149. Multani signed the 2024 10-K and the 2025 10-K, each of which contained materially false and misleading statements regarding ERAS-0015.

150. As a member of the Nominating and Corporate Governance Committee, Multani was responsible for, among other things, overseeing the Company's corporate governance policies, reporting and making recommendations to the Board concerning governance matters, and reviewing and assisting the Board with oversight of matters relating to environmental, social and governance matters affecting the Company. Multani utterly failed to perform these essential duties.

151. Multani authorized the 2025 Proxy Statement, which contained false and misleading statements and material omissions, and Multani faces a substantial likelihood of liability therefor.

152. Multani, as a director of Erasca, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Had Multani taken timely action, the damage caused to Erasca could have been prevented or at least minimized.

153. Multani is neither disinterested nor independent and faces a substantial likelihood of liability for the claims asserted herein. Any demand upon Defendant Multani is futile and, thus, excused.

**H.    Demand Upon Defendant Varney Is Excused**

154. Defendant Varney has served as Erasca's Chair of Research and Development and as a member of the Company's Scientific Advisory Board since August 2020, and has served as an Erasca director since December 2020. Varney therefore is not independent, and the Board itself

- 34 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

has expressly determined that Varney is not independent, as reflected in the 2025 Proxy Statement. In his capacity as Chair of Research and Development, Varney serves as a senior adviser to Lim and occupies a Company role directly relevant to Erasca's research-and-development activities and the scientific and clinical issues underlying the claims asserted herein.

155. Erasca provides Varney with substantial compensation for his services to the Company, including $175,095 in 2024 and $215,089 in 2025. Thus, Varney could not consider a demand for action that might require him to sue the directors who control his continued service and substantial compensation or fellow members of management with whom he works on a day-to-day basis.

156. Hambleton and Varney have a longstanding professional connection arising from their overlapping service at Genentech from approximately 2005 to 2010, where Hambleton held roles of increasing responsibility in BioOncology and Varney held senior research and development positions.

157. Varney authorized the 2024 10-K and the 2025 10-K, each of which contained materially false and misleading statements regarding ERAS-0015.

158. Varney authorized the 2025 Proxy Statement, which contained false and misleading statements and material omissions, and Varney faces a substantial likelihood of liability therefor.

159. Varney, as an officer and director of Erasca and as Chair of Research and Development, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Had Varney taken timely action, the damage caused to Erasca could have been prevented or at least minimized.

- 35 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

160. Varney is neither disinterested nor independent and faces a substantial likelihood of liability for the claims asserted herein. Any demand upon Defendant Varney is futile and, thus, excused.

**I. Other Factors Demonstrating That Demand Upon The Erasca Board Is Excused**

161. Erasca has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Board has not caused the Company to take action to recover for the Company the damages it has suffered and will continue to suffer thereby.

162. The members of the Erasca Board received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have thus benefited from the wrongs herein alleged and have engaged in self-dealing to preserve their positions of control and the perquisites thereof, rendering them incapable of exercising independent, objective judgment in deciding whether to bring this action.

163. Publicly traded companies, such as Erasca, typically carry director and officer liability insurance from which the Company could recover some or all of its losses. However, such insurance normally contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover Erasca's damages.

164. The acts complained of herein constitute violations of fiduciary duties owed by Erasca's officers and directors, and these acts are incapable of ratification.

165. The Board has failed to take remedial action following the disclosure of the wrongdoing alleged herein. Among other things, the Board has not: terminated the employment of the Individual Defendants responsible for the wrongdoing; sought recovery of any compensation paid to the Individual Defendants during the period of the misconduct alleged herein; appointed a special committee or retained independent counsel to investigate the wrongdoing; or implemented any meaningful reforms to the Company's internal controls or corporate governance practices to prevent recurrence of the wrongdoing.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

## VII.    CLAIMS FOR RELIEF

### COUNT ONE
**Against the Individual Defendants *(Except Chacko)* for
Violations of Section 14(a) of the Exchange Act**

166.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as if fully set forth herein.

167.    The Section 14(a) claim alleged herein is based solely on negligence. It is not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claim alleged herein does not allege and does not sound in fraud. Plaintiff specifically disclaims any allegations of reliance upon any allegation of, or reference to, any allegation of fraud, scienter, or recklessness with regard to those non-fraud claims.

168.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

169.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

170.    As set forth above, the 2025 Proxy Statement contained materially false and misleading statements and omitted material information regarding, among other things, the Board's oversight of the material risks facing the Company, the Audit Committee's oversight of the Company's internal accounting controls, and the effectiveness of the Company's Corporate Governance Guidelines and committee charters.

- 37 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

171. The misleading information contained in the 2025 Proxy Statement was material to Erasca's stockholders in determining whether to elect Defendants Lim, Bristol, and Harding-Start to the Board.

172. The material misstatements and omissions in the 2025 Proxy Statement damaged the Company.

173. Plaintiff, on behalf of Erasca, seeks relief for damages inflicted upon the Company based on the misleading 2025 Proxy Statement in connection with the improper election of Defendants Lim, Bristol, and Harding-Start to the Board.

**COUNT TWO**
**Against the Individual Defendants**
**for Breach of Fiduciary Duties**

174. Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

175. The Individual Defendants owed and owe fiduciary duties to Erasca. Because of their fiduciary relationships, the Individual Defendants specifically owed and owe Erasca the highest obligation of good faith and loyalty in the administration of Erasca's affairs. The Board also had specific fiduciary duties as defined by the Company's corporate governance documents and principles that, had they been discharged in accordance with the Board's obligations, would have prevented the misconduct and consequential harm to Erasca alleged herein.

176. The Individual Defendants ignored their obligations under state and federal law. The Individual Defendants failed to make a good faith effort to correct the problems or prevent their recurrence.

177. The Individual Defendants each violated their fiduciary duties to Erasca and its stockholders by, among other things, failing to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Erasca's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects, particularly regarding the clinical development of ERAS-0015; (2) effectively oversee and monitor the material risks

- 38 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

facing the Company, including the risks associated with the Company's preclinical comparisons between ERAS-0015 and RMC-6236 and the risks associated with the ongoing AURORAS-1 clinical trial; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Had the Individual Defendants taken timely action, the damage caused to Erasca could have been prevented or at least minimized.

178. The Individual Defendants further breached their fiduciary duties to Erasca by, *inter alia*, making or allowing the dissemination of false and misleading statements and material omissions in public statements and regulatory filings.

179. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Erasca has sustained significant damages, not only monetarily, but also to its corporate image and goodwill. Such damages include, among other things, the costs of defending and resolving the pending Securities Class Action.

180. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

### COUNT THREE
**Against the Individual Defendants for
Contribution for Violations of Section 21D of the Exchange Act**

181. Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

182. The conduct of the Individual Defendants, as described herein, has exposed the Company to significant liability under various federal securities laws by their misconduct.

183. Erasca is named as a defendant in a related Securities Class Action that alleges and asserts claims arising under the federal securities laws. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Erasca is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Individual Defendants as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. The Company is entitled to contribution and indemnification from the

- 39 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

184. As officers and directors, the Individual Defendants had the power or ability to, and did, control or influence, either directly or indirectly, Erasca's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

185. The Individual Defendants are liable under §21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

186. The Individual Defendants have damaged the Company and are liable to the Company for contribution.

## COUNT FOUR
### Against the Individual Defendants
### for Aiding and Abetting

187. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

188. Each of the Individual Defendants has acted and is acting with knowledge of or with reckless, or grossly negligent, disregard to the fact that the Individual Defendants are in breach of their duties to the Company and have participated in such breaches of duties.

189. In committing the wrongful acts, each of the Individual Defendants has pursued or joined in the pursuit of a common course of conduct. They have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided and abetted, and/or assisted, each other in breaching their respective duties.

190. Because the actions described herein occurred under the Board's supervision and authority, each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

- 40 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

191.    Each of the Individual Defendants aided and abetted each other and rendered substantial assistance in the wrongs complained of herein.

**COUNT FIVE**
**Derivative Claim for Unjust Enrichment Against**
**The Individual Defendants**

192.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

193.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Erasca, as a result of their compensation and director remuneration, while breaching fiduciary duties owed to Erasca.

194.    Plaintiff, as a stockholder and representative of Erasca, seeks on behalf of the Company an order from this Court ordering the Individual Defendants to disgorge and furnish restitution to Erasca of all profits, benefits, and other compensation obtained by them for their wrongful conduct and fiduciary breaches.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Erasca and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants violated Section 14(a) and Section 21D of the Exchange Act;

(c)    Declaring that the Individual Defendants have breached and aided and abetted the breach of their fiduciary duties to Erasca and its stockholders;

(d)    Directing the Company to take all necessary actions to implement and maintain an effective system of internal controls and meaningful Board oversight, particularly with respect to Erasca's clinical development of ERAS-0015 and the Company's public disclosures concerning ERAS-0015;

- 41 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

(e)    Determining and awarding to Erasca the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(f)    Ordering disgorgement of profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties;

(g)    Awarding Erasca restitution from the Individual Defendants, and each of them;

(h)    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys', consultants' and experts' fees, costs, and expenses; and

(i)    Granting such other and further relief as the Court may deem just and proper.

## IX.    JURY DEMAND

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: August 6, 2026                              **WEISS LAW**

**OF COUNSEL:**                         By:    _/s/ Joel E. Elkins_
                                               Joel E. Elkins
**WEISS LAW**                                  1801 Century Park East, 24th Floor,
David C. Katz                                  Los Angeles, CA 90067
Mark D. Smilow                                 Telephone: (310) 208-2800
305 Broadway, 7th Fl.                          Facsimile: (310) 209-2348
New York, NY 10007
Telephone: (212) 682-3025                       *Attorneys for Plaintiff*
Facsimile: (212) 682-3010
Email: dkatz@weisslawllp.com
        msmilow@weisslawllp.com

Joshua M. Rubin
4 Brighton Rd., Ste. 204
Clifton, NJ 07014
Email: jrubin@weisslawllp.com

- 42 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

## VERIFICATION

I, Sarah Malowitzky, on behalf of the ES Trust (the "Trust"), hereby verify that the Trust is a stockholder of Erasca, Inc. ("Erasca"), having first acquired Erasca shares in June 2025 and having held Erasca shares continuously at all relevant times herein. I, on behalf of the Trust, am ready, willing, and able to pursue this stockholder derivative action on behalf of and for the benefit of Erasca. I have reviewed the allegations in the attached Verified Stockholder Derivative Complaint (the "Complaint"), and as to those allegations of which I have personal knowledge, I know those allegations to be true, accurate, and complete. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation, and for that reason, I believe them to be true. Having received a copy of the Complaint, and having reviewed it with my counsel, I hereby authorize its filing on behalf of the Trust.

Dated: August 5, 2026

_Sarah Malowitzky_
_____
Sarah Malowitzky, Trustee
ES Trust